UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|  |  |
|---|---|
| MULTILAYER STRETCH CLING FILM HOLDINGS, INC.,<br><br>        Plaintiff,<br><br>        v.<br><br>BERRY PLASTICS CORPORATION,<br><br>        Defendant. | CIVIL ACTION<br>2:12-cv-02108-WGY-cgc |

YOUNG, D.J.                                November 7, 2014

MEMORANDUM & ORDER

## I.    INTRODUCTION

The motion presently before this Court arises from a patent infringement suit filed by Multilayer Stretch Cling Film Holdings, Inc. ("Multilayer"), the assignee of U.S. Patent No. 6,265,055 (the "'055 Patent"), against Berry Plastics Corporation ("Berry"). Following the claim construction hearing and the filing of the Markman order, Berry filed its present motion for summary judgment, arguing that, as matter of law, none of Berry's accused products infringe the '055 Patent as construed. Arguments on this motion were heard on July 17, 2014, at which time the Court took the matter under advisement. Min. Entry, July 17, 2014, ECF No. 140.

1

For the reasons stated herein, the Court now GRANTS Berry's
motion for summary judgment.

**A.    Procedural Posture**

Multilayer filed a complaint against Berry in the Western
District of Tennessee on February 10, 2012, alleging that the
latter's stretch films infringed the '055 Patent.  Compl. ¶ 11,
ECF No. 1.  On April 10, 2012, Berry filed its answer, along
with defenses and counterclaims, against Multilayer.  Def.'s
Answer, Affirmative Defenses & Countercls. Compl., ECF No. 14.
Two weeks later, Berry filed a motion for summary judgment,
Berry Plastics Corp.'s Mot. Summ. J., ECF No. 17, which was
denied on September, 28, 2012, Electronic Order, ECF No. 55.

Multilayer had also initiated several lawsuits in the
Western District of Tennessee, against additional companies
besides Berry, alleging infringement of the same '055 Patent.
See Order Following Claim Construction Hr'g ("Markman Order") 1
n.1, ECF No. 104.  The then four remaining cases were
consolidated for the purpose of claim construction before Judge
McCalla in Multilayer Stretch Cling Film Holdings, Inc. v. MSC
Marketing & Technology, Inc. et al, No. 12-cv-02112 (the "MSC
Marketing litigation").  Markman Order 1.  On November 8, 2013,
Judge McCalla signed an order (the "Markman Order") construing
thirteen terms of the '055 Patent.  Id. at 102-06.  On the same
day, Judge McCalla entered a separate proposed order (the

2

"Proposed Order") addressing one specific term of the patent
that had not been addressed in the Markman Order. Ct.'s
Proposed Construction "Wherein Each of Said Two Outer Layers And
Each Of Said Five Inner Layers Have Different Compositional
Properties When Compared To A Neighboring Layer" ("Proposed
Order"), ECF No. 105. In this order, Judge McCalla gave the
parties fourteen days to file supplemental briefs on the
proposed construction. Id. at 9. The parties filed their
briefs on November 22, 2013. Supplemental Br. Defs.
Clarification Ct.'s Proposed Claim Construction, case docket No.
12-cv-02112, ECF No. 98; Multilayer's Supplemental Claim
Construction Br., case docket No. 12-cv-02112, ECF No. 99. The
MSC Marketing litigation, however, was dismissed with prejudice
after the parties agreed to a settlement. Stipulation Dismissal
With Prejudice, case docket No. 12-cv-02112, ECF No. 101;
Judgment, case docket No. 12-cv-02112, ECF No. 102. As a
result, a final order has not been entered on the remaining
claim term.

On March 14, 2014, Berry filed a motion for partial summary
judgment. Def. Berry Plastics Corp.'s Mot. Summ. J. Non-
Infringement U.S. Patent No. 6,265,055, ECF No. 120; Def. Berry
Plastics Corp.'s Br. Supp. Mot. Summ. J. Non-Infringement U.S.
Patent No. 6,265,055 ("Berry's Br."), ECF No. 120-1. Two months
later, Multilayer filed a brief in opposition to Berry's motion.

3

Resp. Opp'n Berry Plastics Corp.'s Mot. Summ. J. Non-Infringement U.S. Patent No. 6,265,055 ("Multilayer's Opp'n"), ECF No. 129. Berry filed a reply on June 2, 2014. Def. Berry Plastics Corp.'s Reply Br. Supp. Mot. Summ. J. Non-Infringement U.S. Patent No. 6,265,055 & Resp. Multilayer's Statement Additional Facts ("Berry's Reply"), ECF No. 134.

## B.  Jurisdiction

28 U.S.C. sections 1331 and 1338(a) confer upon this Court jurisdiction to hear the instant matter, as the claims at issue arise under federal patent law.

## C.  Factual Summary

The evidentiary record in this matter is replete with helpful and detailed information regarding all aspects of the production and manufacture of the various stretch-films. Though both informative and necessary for the global claim, given the focused nature of this motion, and for the sake of concision, the facts outlined below are restricted to those which directly relate to the infringement claim presently before this Court.

This matter arises from the alleged infringement of the '055 Patent, issued on July 24, 2001, to David Simpson and Terry Jones. Compl., Ex. A, U.S. Patent No. 6,265,055 C3 ("U.S. '055 Patent"), ECF No. 1-3.[1] Multilayer is the present assignee of

---

[1] A thorough review of the patent prosecution history can be found in the Markman Order. Markman Order 16-19. In sum, the

4

all "right, title and interest in the '055 Patent." Compl. ¶ 9. The '055 Patent is titled "Multilayer Stretch Cling Film" and relates to a "multi-layer stretch film comprising at least 7 layers and having excellent mechanical properties and stretch film performance." U.S. '055 Patent, Abstract.

Multilayer alleges that Berry's stretch-film products infringe "at least claim 1 of the '055 [P]atent." Compl. ¶ 11. In response, Berry raises a number of defenses, including invalidity, non-infringement, and inequitable conduct. Def.'s Answer Affirmative Defenses & Countercls. Compl. 2-3, ECF No. 14.

### 1.   The '055 Patent

The '055 Patent relates to a "multi-layer stretch film comprising at least 7 layers . . . . compris[ing] two outer, or skin layers . . . [and] at least five internal layers to assist in producing mechanical strength and stretchability." U.S. '055 Patent, col.1:51-58.  The patent-in-issue is described in thirty-four claims, of which two, claims 1 and 28, are independent.  U.S. '055 Patent; see also Markman Order 13.  It

---

'055 Patent has been issued three reexamination certificates and two certificates of correction by the U.S. Patent and Trademark Office.  See id.  The third reexamination certificate was issued August 2, 2011.  Id. at 17.  The final claim language of Claim 1 can be found on the Certificate of Correction issued July 14, 2009.  U.S. '055 Patent PageID 19-20.  The final claim language of Claim 28 can be found in second reexamination certificate number 6761.  Id. at PageID 24 col.2:4-26.

is the alleged non-infringement of these nearly identical claims which is presently before this Court.  <u>See</u> Berry's Br. 2-4.

Claim 1 teaches:

> A multi-layer, thermoplastic stretch wrap film containing seven separately identifiable polymeric layers, comprising:
> (a) two identifiable outer layers, at least one of which having a cling performance of at least 100 grams/inch, said outer layer being selected from the group consisting of linear low density polyethylene, very low density polyethylene, and ultra low density polyethylene resins, said resins being homopolymers, copolymers, or terpolymers, of ethylene and alpha-olefins; and
> (b) five identifiable inner layers, with each layer being selected from the group consisting of linear low density polyethylene, very low density polyethylene, ultra low density polyethylene, and metallocene-catalyzed linear low density polyethylene resins; said resins are homopolymers, copolymers, or terpolymers, of ethylene and $C_3$ to $C_{20}$ alpha-olefins; wherein each of said two outer layers and each of said five inner layers have different compositional properties when compared to a neighboring layer.

U.S. '055 Patent PageID 19-20.  Claim 28 teaches:

> A multi-layer, thermoplastic stretch wrap film containing seven polymeric layers, comprising:
> (a) two outer layers, at least one of which having a cling performance of at least 100 grams/inch, said outer layer being selected from the group consisting of linear low density polyethylene, very low density polyethylene, and ultra low density polyethylene resins, said resins being homopolymers, copolymers, or terpolymers, of ethylene and alpha-olefins; and
> (b) five inner layers, with each layer being selected from the group consisting of linear low density polyethylene, very low density polyethylene, ultra low density polyethylene, and metallocene-catalyzed linear low density polyethylene resins; said resins being homopolymers, copolymers, or terpolymers, of ethylene and $C_3$ to $C_{20}$ alpha-olefins,

wherein at least one of said inner layers comprises a metallocene catalyzed linear low density polyethylene resin with a melt index of 0.5 to 3 dg/min and a melt index ratio of 16 to 80; and wherein each of said two outer layers and each of said five inner layers have different compositional properties when compared to a neighboring layer.

Id. at PageID 24 col.2:4-26.

## 2. Claim Construction

At the request of the parties, during the claim construction process that took place last November, Judge McCalla construed thirteen terms, including, inter alia, the Markush limitations[2] for the inner layers of the claimed multilayer film and the term "linear low density polyethylene" ("LLDPE"). Markman Order 62-82. With regard to the former, Judge McCalla agreed with the construction proposed by Berry and construed the Markush group of element (b) in claims 1 and 28 as closed.[3] Markman Order 63. In doing so, Judge McCalla rejected

---

[2] "A Markush group is a listing of specified alternatives of a group in a patent claim, typically expressed in the form: a member selected from the group consisting of A, B, and C." Abbott Labs. v. Baxter Pharm. Prods., Inc., 334 F.3d 1274, 1280 (Fed. Cir. 2003). A claim drafted in this manner teaches a situation where any of the specified materials are "alternatively useable for the purposes of the [patented] invention." Application of Driscoll, 562 F.2d 1245, 1249 (C.C.P.A. 1977).

[3] A closed Markush group, identifiable by the use of the phrase "consisting of," rather than "including" or "comprising," requires the singular (rather than combined) use of members of the group. Abbott Labs., 334 F.3d at 1280-81 ("If a patentee desires mixtures or combinations of the members of the Markush

Multilayer's contention that the claims taught blends of resins from two or more different classes, at least in the seven layers taught by the patent. See id. at 62-63; see also id. at 48-57 (discussing in more depth Multilayer's related argument regarding the Markush group for the outer layers of the film). This construction is set out below:

| Element (b) of Claim 1; Claim 28[4] | Court's Construction |
|---|---|
| "five identifiable inner layers, with each layer being selected from the group consisting of linear low density polyethylene, very low density polyethylene, ultra low density polyethylene, and metallocene-catalyzed linear low density polyethylene resins" | "each of five identifiable inner layers must contain only one class of the following resins, and no other resin(s): linear low density polyethylene resins, very low density polyethylene resins, ultra low density polyethylene resins, or metallocene-catalyzed linear low density polyethylene resins" |

Id. at 104 (emphasis added to court's construction). By contrast, in construing the term "LLDPE" Judge McCalla favored the construction proposed by Multilayer, declining to narrow the definition of LLDPE to specific catalyzing agents or densities and instead proposing a definition solely based upon the

---

group, the patentee would need to add qualifying language while drafting the claim").

[4] While it appears that the term "identifiable" is only present in claim 1, and not claim 28, this potential claim construction issue was not raised by either party. Accordingly, this Court makes its decision based on the claim construction as determined in the Markman Order and as briefed by the parties in the instant matter. See Powers v. Hamilton Cnty. Pub. Defender Comm'n, 501 F.3d 592, 609-10 (6th Cir. 2007) ("[C]ourts do not typically issue rulings on matters not brought to their attention by the parties . . . .").

"branching architecture" of the resins. Id. at 64-82. The
judge's construction is set out below:

| Claim 1; Claim 28 | Court's Construction |
|---|---|
| "linear low density polyethylene" | "a class of copolymers of ethylene and alpha-olefins, which are <u>characterized by relatively straight polymer chains with short chain branching and little or no long chain branching</u>" |

Id. at 104 (emphasis added).

### 3.   The Accused Films

Multilayer asserts that at least five stretch-films
manufactured by Berry infringe the patent-in-issue.  Statement
Material Facts Not Dispute Supp. Def. Berry Plastics Corp.'s
Mot. Summ. J. Non-Infringement U.S. Patent No. 6,265,055
("Berry's Facts") ¶ 4, ECF No. 121.  The allegedly infringing
films are: the Revolution machine films, R-122 and R-122Q; the
Stratos film; the T-Machine film, and the Max Plus 2 film
(jointly "the Accused Films").  Id.  The Accused Films all have
outer and inner layers, with the inner layers composed of blends
of resins from the following classes: metallocene-catalyzed
linear low density polyethylene ("mLLDPE"), LLDPE; low density
polyethylene ("LDPE"), polypropylene ("PP"), and ultra low
density polyethylene ("ULDPE").  Def.'s Objections & Resps.
Pl.'s First Set Interrogs. ("Berry's Resp. Interrogs.") 9-10,
ECF No. 64.

## II. ANALYSIS

### A. Summary Judgment Standard

"Summary judgment is as available in patent cases as in other areas of litigation." Continental Can Co. USA, Inc. v. Monsanto Co., 948 F.2d 1264, 1265 (Fed. Cir. 1991) (citing Chore-Time Equip., Inc. v. Cumberland Corp., 713 F.2d 774, 778-79 (Fed. Cir. 1983)). Summary judgment is proper if the moving party shows, based on the materials in the record, that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1985). "Conclusory allegations, improbable inferences, and unsupported speculation, are insufficient to establish a genuine dispute of fact." Travers v. Flight Servs. & Sys., Inc., 737 F.3d 144, 146 (1st Cir. 2013) (quoting Triangle Trading Co., Inc. v. Robroy Indus., Inc., 200 F.3d 1, 2 (1st Cir. 1999)); see also Anderson, 477 U.S. at 252 (concluding that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient"). Whether a fact is material will depend upon the substantive law of the case, and only factual disputes that might affect the outcome of the suit can properly preclude summary judgment. Anderson, 477 U.S. at 248.

When adjudicating a motion for summary judgment, a court must view the record "in the light most favorable to the non-moving part[y]," drawing all reasonable inferences in the non-movant's favor. Pineda v. Toomey, 533 F.3d 50, 53 (1st Cir. 2008). Summary judgment will be granted where, after adequate time, the non-moving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to [its] case, and on which [it] will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## B. Prematurity

In its brief in opposition to the instant motion, Multilayer raises both procedural and substantive arguments against the granting of summary judgment. See Multilayer's Opp'n 1. Procedurally, Multilayer argues that the motion is premature because claim construction is incomplete, Berry has been uncooperative in discovery, and expert discovery has yet to be undertaken. Id. at 2. This Court, after review, concludes that the instant motion is ripe.

An analysis of the record does not evidence any insufficiency in discovery undertaken,[5] and whether expert

---

[5] An analysis of the record suggests that the additional recently discovered films alleged to be potentially infringing, see Multilayer's Opp'n 3-5, have been known to Multilayer for some time, and discovery regarding their formulation has been undertaken, see Berry's Reply, Ex. C, Pl.'s Second Set Requests Prod. Docs. & Things Berry Plastics Corp. ¶ C, ECF No. 134-3

discovery is necessary in this matter is irrelevant. Although the discovery period is yet to expire, see Second Am. Rule 16(B) Scheduling Order 2, ECF No. 116,[6] Multilayer has been aware of Berry's intention to file this motion since February 12 this year, Multilayer's Opp'n, Ex. A, Email to Multilayer's Attorneys, ECF No. 129-1 ("Berry plans to file a motion for summary judgment shortly . . . . The Court's November construction makes clear that the [Accused Films] fall outside the scope of the asserted claims of the '055 Patent."), and Multilayer has not otherwise faced any true barrier to obtaining expert discovery.

Finally, though a final claim construction order has not been entered,[7] all terms relevant to the instant motion have been construed, see Markman Order, and for the purposes of this motion, the Court follows Judge McCalla's able construction.

---

(defining "Accused Films" as of January 15, 2014); Berry's Reply 7-8 (claiming that these recently discovered films are produced in de minimis amounts and that "Berry provided formulations for these films to the extent available").

[6] The second amended rule 16(b) scheduling order states that the parties will disclose their initial expert reports within 75 days of the Court's claim construction decision.

[7] On November 8, 2013, Judge McCalla signed two orders related to the claim construction in this matter. See Markman Order; Proposed Order. The first construed all but one of the disputed terms, see Markman Order, whilst the second offered a proposed construction of the final term and sought "supplemental briefing on this . . . construction" prior to the entering of a final order, Proposed Order 9.

## C. Non-Infringement

In order to infringe a patent claim, the accused device must embody each and every element of that claim, either literally or under the doctrine of equivalents. Stewart-Warner Corp. v. City of Pontiac, Mich., 767 F.2d 1563, 1570 (Fed. Cir. 1985). "A patent infringement analysis consists of two steps: first the patent claims are construed, [and] second the properly-construed claims are compared to the product accused of infringement." In re Omeprazole Patent Litig., 490 F. Supp. 2d 381, 415 (S.D.N.Y. 2007) (citing Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed. Cir. 1995), aff'd, 517 U.S. 370 (1996)), aff'd, 281 F. App'x 974 (Fed. Cir. 2008). The first step of this analysis -- claim construction -- is a matter of law, see Markman, 52 F.3d at 977-78, and thus it is the court's role to "discern the meaning of the claim language," Pitney Bowes, Inc. v. Hewlett-Packard Co., 182 F.3d 1298, 1304 (Fed. Cir. 1999) (citing Markman, 52 F.3d at 979). The second step -- the determination whether the construed claims read on the accused products -- is, by contrast, a matter of fact. Mannesmann Demag Corp. v. Engineered Metal Prods. Co., 793 F.2d 1279, 1282 (Fed. Cir. 1986). Where, however, the parties do not dispute relevant facts but instead dispute the construction of a claim, "the question of literal infringement collapses into one of claim construction and is thus amenable to summary judgment."

13

<u>MBO Labs., Inc.</u> v. <u>Becton, Dickinson & Co.</u>, 783 F. Supp. 2d 216, 220-21 (D. Mass. 2011) (Stearns, J.) (citing <u>Athletic Alts., Inc.</u> v. <u>Prince Mfg., Inc.</u>, 73 F.3d 1573, 1578 (Fed. Cir. 1996)), <u>aff'd</u>, 467 Fed. App'x 892 (Fed Cir. 2012).

In the instant motion, Berry contends that none of the Accused Films infringe the '055 Patent because each lacks five inner layers that meet the requirements of claims 1 and 28. Berry's Br. 12. More specifically, Berry alleges that the Accused Films' inner layers: (a) impermissibly include blends of classes of resins from the Markush group and (b) impermissibly include resins from outside the Markush group. <u>Id.</u>

In opposition, Multilayer contends that there remains a genuine issue of material fact, namely whether each of the resins used in the inner layers of the Accused Films can be characterized as an LLDPE resin, as the term was construed at the Markman hearing. Multilayer's Opp'n 14. Multilayer suggests that all of the listed resins "all fall within a single class," and, as a consequence, a combination of the listed resins "do[es] not constitute [a] blend[]."[8] <u>Id.</u> Therefore, none of the resins allegedly used in the inner layers of the

---

[8] The thrust of Multilayer's argument is that a combination of, for instance, mLLDPE and LLDPE in the inner layer of a cling film would be permissible, despite the recognized closed nature of the Markush group, because both resins are technically LLDPE as the term was construed.

Accused Films fall outside the Court's construction of the term LLDPE. Id. at 12-16. This Court does not agree.

For the reasons that follow, this Court GRANTS Berry's motion for summary judgment.

### 1. Impact of Claim Construction

Following the claim construction hearing, the phrase "each [inner] layer being selected from the group consisting of [LLDPE, VLDPE, ULDPE and mLLDPE]" was construed to describe a "closed Markush group," not permitting blends. Markman Order 62-63; see also id. at 55 ("[T]here is nothing in the language of the claim itself to indicate blends of the specifically listed polymers.") (emphasis added); id. at 63 ("[E]ach of five . . . inner layers must contain only one class of . . . resins, and no other resin(s) . . . .") (emphasis added). Relevantly, Judge McCalla also construed the term "LLDPE" to mean "a class of copolymers of ethylene and alpha-olefins, which are characterized by relatively straight polymer chains with short chain branching and little or no long chain branching." Id. at 82 (emphasis added). In reaching this conclusion, Judge McCalla acknowledged that this definition was sufficiently broad to encompass mLLDPE resins, as well as VLDPE and ULDPE. Id. at 74-76, 81.

The inner layers of all five of the Accused Films include blends of resins. Berry's Br. 12. More specifically, the inner

15

layers of the Accused Films include layers with blends of mLLDPE and LLDPE and blends of ULDPE and LLDPE.[9] See Berry's Resp. Interrogs. 9-10; Multilayer's Opp'n 12. Thus, prima facie, the internal layers of the Accused Films do not appear to be taught by the closed Markush group limitation, and thus cannot infringe the asserted claims of the '055 Patent. See Berry's Br. 14-15. Multilayer argues, however, that as it is "undisputed that [mLLDPE], LLDPE and ULDPE each fit within the Court's construction of linear low density polyethylene . . . . [mLLDPE, LLDPE, ULDPE and VLDPE] all fall within a single class of resins." Multilayer's Opp'n 15, 17. Thus, it necessarily follows that a combination of two or more resins from separate classes, for example mLLDPE and LLDPE, "do[es] not constitute [a] blend[]." Id. at 14. Multilayer's interpretation is flawed.

### 2.   Permissibility of Blends

This motion turns on a question of interpretation: does the '055 Patent, given the broad construction of LLDPE, permit blends of resins from at least two of the specified classes taught in claims 1 and 28 -- mLLDPE, LLDPE, ULDPE and VLDPE --

---

[9] While ULDPE is a major component only of the outer layers, see Berry's Resp. Interrogs. 9-10; Multilayer's Opp'n 11-12, ULDPE is present in some inner layers because portions of finished film (including both outer and inner layers) are ground up and placed into extruders that create inner layers of the Accused Films, see Berry's Br. 15-16; Berry's Facts ¶¶ 42-43; Multilayer's Opp'n 12.

in an inner layer that is subject to the Markush group
limitation?

Turning first to the construction of the Markush
limitation, it is apparent that the permissibility of blends of
resins within a film's inner layer was directly considered and
rejected during claim construction.  See, e.g., Markman Order 98
(holding that claims 1 and 28 "do not contemplate blends of
different resins"); id. at 55 ("Element (a) of Claim 1 and
element (a) of Claim 28 do not contain any qualifying language
to indicate that blends of resins are within the scope of the
independent claims."); id. ("[T]here is nothing in the language
of the claim itself to indicate blends of the specifically
listed polymers.")(emphasis added).  The definition ascribed to
LLDPE is acknowledged to be sufficiently broad to encompass
mLLDPE, see id. at 74 ("LLDPE . . . is a broader term and
includes polyethylenes that can be produced using various
catalysts."), VLDPE, and ULDPE, see id. at 75-76.  The fact that
a resin can be described as both an mLLDPE resin and also as a
broader LLDPE resin does not mean that the combination, in an
inner layer of a stretch film, of an mLLDPE resin and a LLDPE
resin catalyzed using an agent other than metallocene does not
constitute a prohibited blend.  Though resins within the classes
of mLLDPE, VLDPE, and ULDPE can (also) broadly be characterized
as LLDPE resins, a resin within one of these separate specified

classes does not lose its classification as such merely because it may also be described as a member of another broader class. In directly addressing this issue, Judge McCalla was emphatic that blends of the specifically listed classes were not taught by the patent. Id. at 63 (construing language in element (b) of claims 1 and 28 and drawing direct parallels to analysis of element (a), which directly rejected the suggestion that the claims taught blends of the enumerated resins, see id. at 55, 57). At this juncture, to permit blends would impermissibly require the Court to ignore the "specific limitations" of the '055 Patent, Becton Dickinson & Co. v. C.R. Bard, Inc., 922 F.2d 792, 797 (Fed. Cir. 1990), and for the aforementioned reasons, the Court concludes that blends of resins from two or more of the specified classes are not taught by the '055 Patent.

It is uncontested that at least one of the inner layers of the Accused Films contains blends of resins from the classes of mLLDPE, ULDPE, and LLDPE -- all classes of resins separately specified in claims 1 and 28. See Berry's Resp. Interrogs. 9-10; Multilayer's Opp'n 12. Because, as discussed above, the '055 Patent does not teach blends of the specifically listed classes of resins, the Accused Films do not do not "embody every element" of claim 1 and claim 28, Stewart-Warner, 767 F.2d at 1570, and thus do not infringe the '055 Patent.

### 3. Indefiniteness

Even were the Court to adopt Multilayer's interpretation of claims 1 and 28 of the '055 Patent -- that "[i]f all of the resins within a stretch film can be characterized as [LLDPE] as that term [was] construed by [Judge McCalla], then they all fall within a single class of resins and do not constitute blends," Multilayer's Opp'n 14 -- this would avail Multilayer nothing. Contrary to Multilayer's argument, the necessary consequence of an interpretation which has all resins falling within a single class is not that all combinations and permutations are thus permissible, but rather it is that claims 1 and 28 are indefinite and thus invalid. See, e.g., Nautilus, Inc. v. Biosig Instruments, Inc., 134 S. Ct. 2120, 2125 (2014).

The Patent Act requires that every patent specification "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor . . . regards as the invention." 35 U.S.C. § 112(b). A patent is indefinite where its claims "fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." Nautilus, 134 S. Ct. at 2124. In evaluating the "definiteness" of a patent, the Court adopts the perspective of "someone skilled in the relevant art . . . at the time the patent was filed," reading all claims "in light of the patent's specification and prosecution history." Id. at 2128.

Though "[s]ome modicum of uncertainty . . . is the 'price of ensuring the appropriate incentives for innovation,'" the patent must "afford clear notice of what is claimed," and its claims must be sufficiently precise to "inform those skilled in the art about the scope of the invention with reasonable certainty." Id. at 2128-29 (citations omitted); see also id. at 2129 ("[T]he definiteness requirement . . . mandates clarity . . . ."). Thus, while the double inclusion of elements within a Markush group is permissible, see Markman Order 76-77, (citing Manual of Patent Examining Proc. ("M.P.E.P.") § 2173.05h (9th ed., 2014)); Ex Parte Dale E. Hutchens & Norman Cohen, Appeal No. 1996-3292, 1996 WL 1749363, at *1 (Bd. Pat. App. & Interf.) (noting that "there is no automatic rule against double inclusion" (internal quotation marks omitted)), care must be taken to ensure that this act does not then make the claim indefinite. See Ex Parte Hutchens, 1996 WL 1749363 at *1; see also Ex parte Ionescu, 222 U.S.P.Q. 537, 1984 WL 63050, at *4 (Pat. & Tr. Office Bd. App. Jan. 12, 1984).

Multilayer's interpretation is not only a distortion of the Markush group taught by the patent, but it also renders independent claims 1 and 28 indefinite. Adopting this interpretation would teach a stretch film with inner layers composed of an almost indefinite number of combinations of resins that fall with the (broadly construed) class of LLDPE

resins, such that "persons skilled in the art [could not]
determine the metes and bounds of the claimed invention."
M.P.E.P. § 2173.05(h). Understood in this manner, the claims
fail to narrow the taught composition of the layers to the
degree necessary to provide "reasonable certainty" as to the
scope of the claim. Nautilus, 134 S. Ct. at 2124. Thus, this
interpretation of claims 1 and 28 would render them indefinite,
and the '055 Patent invalid.

Given, however, that patents are presumed valid, 35 U.S.C.
§ 282(a), and that the general modus operandi of the court is to
"protect the inventive contribution of patentees" -- and
accordingly to "find[] claims indefinite only if reasonable
efforts at claim construction prove futile" -- this Court does
not elect to grant summary judgment on this basis, Exxon
Research & Eng'g Co. v. United States, 265 F.3d 1371, 1375 (Fed.
Cir. 2001), abrogated on other grounds by Nautilus, 134 S. Ct.
at 2120. Moreover, having concluded that the Accused Films do
not infringe the '055 Patent as construed, it is unnecessary to
address Berry's alternative arguments.

## III. CONCLUSION

For the aforementioned reasons, this Court GRANTS Berry's motion for summary judgment, ECF No. 120.

**SO ORDERED.**

WILLIAM G. YOUNG
DISTRICT JUDGE[10]

---

[10] Of the District of Massachusetts, sitting by designation. <u>See</u> Transfer, June 21, 2012, ECF No. 33.